FILED
2026 Aug-27 PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **KAREN MCCONNON,** | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:25-cv-01046-MHH** |
| | } | |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | } | |
| **Defendant.** | } | |

# MEMORANDUM OPINION

Karen McConnon seeks judicial review of a final adverse decision of the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner denied Ms. McConnon's applications for a period of disability insurance benefits and supplemental security income based on an Administrative Law Judge's finding that Ms. McConnon was not disabled. (Doc. 7-3, p. 2). Ms. McConnon argues that the ALJ's finding is not supported by substantial evidence, that the findings of fact are insufficient to resolve the material legal issues, and that the ALJ did not apply the correct legal standards in reaching his finding. (Doc. 1, p. 2). After careful review of the administrative record, for the reasons discussed below, the Court remands this matter for additional proceedings consistent with this opinion.

## LEGAL STANDARD FOR DISABILITY AND SSI

To succeed in her administrative proceedings, Ms. McConnon had to prove that she was disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013). "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Gaskin,* 533 Fed. Appx. at 930 (citing 42 U.S.C. § 423(d)(1)(A)).[1]

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

[1] Title II of the Social Security Act governs applications for benefits under the Social Security Administration's disability insurance program. Title XVI of the Act governs applications for Supplemental Security Income or SSI. "For all individuals applying for disability benefits under title II, and for adults applying under title XVI, the definition of disability is the same." https://www.ssa.gov/disability/professionals/bluebook/general-info.htm (lasted visited July 26, 2022).

*Winschel v. Comm'r of Soc. Sec. Admin*., 631 F.3d 1176, 1178 (11th Cir. 2011). "The claimant has the burden of proof with respect to the first four steps." *Wright v. Comm'r of Soc. Sec.*, 327 Fed. Appx. 135, 136-37 (11th Cir. 2009). "Under the fifth step, the burden shifts to the Commissioner to show that the claimant can perform other jobs that exist in the national economy." *Wright*, 327 Fed. Appx. at 137.

**ADMINISTRATIVE PROCEEDINGS**

In 2021, Ms. McConnon applied for supplemental security income and for a period of disability insurance benefits. (Doc. 7-7, pp. 2–12). Ms. McConnon alleged that her disability began on June 30, 2021. (Doc. 7-7, p. 2). The Commissioner denied Ms. McConnon's claims on August 29, 2022, (Doc. 7-4, pp. 13, 23), and denied her request for reconsideration on February 23, 2024, (Doc. 7-4, pp. 38, 51). Ms. McConnon requested a hearing before an ALJ. (Doc. 7-5, pp. 35–36). Ms. McConnon's administrative hearing took place via telephone on August 14, 2024. (Doc. 7-3, p. 32). The ALJ issued an unfavorable decision on September 18, 2024. (Doc. 7-3, p. 24). Ms. McConnon requested review of the ALJ's decision. (Doc. 7-6, pp. 28–30). On May 5, 2025, the Appeals Council denied Ms. McConnon's request for review, (Doc. 7-3, pp. 2–4), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g) and § 1383(c).

## EVIDENCE IN THE ADMINISTRATIVE RECORD

*Ms. McConnon's Medical Records*

To support her applications, Ms. McConnon submitted medical records dating to 2000. Ms. McConnon's medical records relate to the diagnoses and treatment of lumbar degenerative disc disease, left knee degenerative joint disease, rheumatoid arthritis, chronic obstructive pulmonary disease, generalized anxiety disorder, major depressive disorder, and neuropathy. The Court has reviewed Ms. McConnon's complete medical history and briefly summarizes the following medical records because they are the most relevant to Ms. McConnon's arguments in this appeal.

In February of 2000, Ms. McConnon saw Dr. David Fowler at East Suburban Orthopedic Associates for knee pain and arthritis. (Doc 7-9, p. 3). On March 17, 2000, Ms. McConnon decided to undergo knee surgery. (Doc 7-9, p. 15). On April 6, 2000, Dr. Fowler performed arthroscopic debridement and loose body removal surgery on Ms. McConnon's left knee to treat her degenerative joint disease. (Doc 7-9, p. 5). From September until November of 2000, Ms. McConnon attended follow-up visits with Dr. Fowler. (Doc. 7-9, p. 8). He concluded that Ms. McConnon's knee motion was excellent, but her knee swelled after prolonged standing, and she would require treatment in the future. (Doc. 7-9, p. 8).

Ms. McConnon has no relevant medical records from 2000 until April 13, 2015, when she began treatment with Rapid Care Family Medical Clinic. (Doc. 7-

9, p. 87). She reported complaints of abdominal pains, bloody, stool, and leg cramps. (Doc. 7-9, p. 87). She was referred for a colonoscopy with a gastroenterologist. (Doc. 7-9, p. 88). She returned on July 7, 2015, complaining of a knot on her right hand and pain in her left thumb and knee. (Doc. 7-9, p. 78). Dr. Douglas Ginas diagnosed the knot as a ganglion cyst, and he X-rayed her knee. (Doc. 7-9, p. 79). Dr. Ginas prescribed pain medication and discharged Ms. McConnon with plans to refer her to Dr. Joe Kendra for the cyst. (Doc. 7-9, pp. 80–81).

Ms. McConnon visited Rapid Care Family Medical Clinic over the next several years, consistently complaining of back and hand pain. (Doc. 7-9, pp. 52, 65, 78). During this time, she rated her pain while unmedicated at an 8 out of 10 or higher, with medicated scores usually at 6 to 7 out of 10. (Doc. 7-9, p. 52; Doc. 7-10, p. 24; Doc. 7-11, p. 7). Although Ms. McConnon reported different levels of pain over this span of time, her doctors frequently noted that she was managing well with her treatment regimens. (Doc. 7-10, p. 32; Doc. 7-11, pp. 9, 80; Doc. 7-12, p. 9). The treatment included drugs such as Naprosen, gabapentin, estradiol, hydrocodone-acetaminophen, albuterol, Norco, and others for pain and COPD. (Doc. 7-11, p. 9; Doc. 7-14, pp. 31–32, 101).[2]

[2] She received other prescriptions during this time, but these were the most consistent and most relevant to the disability claims.

On September 17, 2021, in a function report, Ms. McConnon reported that she could prepare simple meals, use a phone, follow instructions, count change, attend to her personal needs, shop, handle money, perform household chores, attend medical appointments, and participate in her healthcare. (Doc. 7-8, pp. 13–20). On November 9, 2023, Ms. McConnon reported that she still could perform these activities. (Doc. 7-8, pp. 46–53).

On June 27, 2022, Ms. McConnon visited United Doctors Family Medical for X-rays of her back. (Doc. 7-14, pp. 117, 122). The X-rays revealed degenerative disc disease. (Doc. 7-14, p. 122). Dr. Alvin Tenchavez performed a physical examination and found that Ms. McConnon's grip strength was a 5/5, that she could make fists and turn doorknobs, that her deep tendon reflexes were normal, and that she could heel, toe, and tandem walk. (Doc. 7-14, pp. 121–22).

On September 17, 2022, Ms. McConnon went to Rapid Care Family Medical Clinic complaining of chronic pain. (Doc. 7-14 p. 130). She told her doctor that her pain level was 9 and that her back and foot pain was worse. (Doc. 7-14, p. 130). Dr. James Austin prescribed Norco, gabapentin, Prozac, albuterol, brompheniramine-psuedophedrine, antibiotics, and blood pressure medication. (Doc. 7-14, p. 132). Ms. McConnon's record with Rapid Care Family Medical Center contains a comprehensive list of ailments, active and resolved, and a list of treating physicians. (Doc. 7-14, pp. 5–13).

On December 19, 2023, Ms. McConnon visited the Gadsden Psychological Services, where Dr. June Nichols conducted a comprehensive psychological evaluation. (Doc. 7-14, pp. 150–51). Dr. Nichols noted that Ms. McConnon completed school in the 8th grade. (Doc. 7-14, p. 151). Dr. Nichols observed that Ms. McConnon was oriented in time, space, and situation. (Doc. 7-14, p. 152). Dr. Nichols reported that Ms. McConnon's memory seemed to be intact and that her speed of mental processing was adequate. (Doc. 7-14, p. 152). Ms. McConnon could perform addition, but she could not subtract. (Doc. 7-14, p. 152). Dr. Nichols diagnosed Ms. McConnon with major depressive disorder and borderline intelligence, and Dr. Nichols noted a history of speech disorder. (Doc. 7-14, p. 153).

On January 10, 2024, Ms. McConnon went to United Doctors Family Medical for a disability determination. (Doc. 7-14, p. 158). Consistent with earlier evaluations, Dr. Tenchavez noted that Ms. McConnon's grip strength and ability to walk were normal. (Doc. 7-14, p. 160). X-rays of Ms. McConnon's spine showed normal alignment but diminished intervertebral disc spaces, a sign of degenerative disc disease. (Doc 7-14, p. 161). Dr. Tenchavez diagnosed Ms. McConnon with chronic back pain, COPD, hypertension, generalized anxiety disorder, and diabetes mellitus II with neuropathy. (Doc. 7-14, p. 161).

On June 12, 2024, Ms. McConnon went to the Go Medical Group complaining of sudden onset hand pain. (Doc. 7-15, p. 2). CRNP Aracely Alvarez prescribed

medicine to treat a possible gout flare and other medications to treat hypertension and diabetes. (Doc. 7-15, p. 4). Dr. George Eason examined Ms. McConnon's right hand and found no evidence of an acute fracture or dislocation. (Doc. 7-15, p. 17).

On July 22, 2024, Ms. McConnon went to Albertville Family Medicine. She complained of neck, knee, and lower back pain and asked for a prescription for Norco. (Doc. 7-15, p. 18). She rated her pain as a 10 without medication and a 6 with medication. (Doc. 7-15, p. 18). Dr. Ginas evaluated Ms. McConnon and attributed her pain to rheumatoid arthritis. (Doc. 7-15, p. 18). Dr. Ginas noted that Ms. McConnon had an ulnar deviation of her digits in her hands and bilateral pain in her fingers. (Doc. 7-15, p. 18).[3] Dr. Ginas wrote that Ms. McConnon had rheumatoid arthritis "with gross deformity [of] her hands." (Doc. 7-15, p. 26). He prescribed cohichine, Farxiga, glipizide, and Lisinopril. (Doc. 7-15, p. 20).

*Administrative Hearing*

Ms. McConnon attended an administrative hearing on August 14, 2024, via telephone. (Doc. 7-3, p. 32). Ms. McConnon testified that she last worked on June 30, 2021, and that she has an eighth-grade education. (Doc. 7-3, p. 34). She also

[3] "Rheumatoid arthritis (RA) is a chronic systemic auto-immune inflammatory disease that may affect all parts of the body but predominantly afflicts the limb joints. Ulnar deviation of fingers is a frequent problem occurring in patients with RA that compromises grasp and affects the aesthetic appearance of the hand and it is characterized by volar subluxation of the proximal phalanges and ulnar drift of the fingers." (https://pmc.ncbi.nlm.nih.gov/articles/PMC5030855/, last visited Aug. 26, 2026).

testified that she experienced pain daily in her back, neck, and elbows, that she was unable to stand for more than 20 to 30 minutes, and that she was unable to carry objects in her right hand. (Doc. 7-3, p. 35). Ms. McConnon stated that she lost her insurance for a time and was unable to get treatment for several months. (Doc. 7-3, p. 36). She testified that she spent most of her day laying down due to pain, which she rated as a seven to nine out of ten. (Doc. 7-3, pp. 36–37). She testified that she had trouble focusing on things and that she had difficulty being around other people to the point that she did not want to leave her house. (Doc. 7-3, p. 37).

When asked about her prior employment, Ms. McConnon testified that her last job involved deboning chicken at a chicken processing plant. (Doc. 7-3, p. 38). She testified that she could not return to this type of work because her hand condition prevented her from gripping and holding objects. (Doc. 7-3, p. 38).

When the ALJ questioned Ms. McConnon about her COPD, Ms. McConnon responded that she was using only an inhaler. (Doc. 7-3, p. 38). Ms. McConnon indicated that she had breathing trouble when she laid down for extended periods of time or when she walked. (Doc. 7-3, p. 39). When asked about her arthritis, Ms. McConnon testified that she experienced pain throughout her body and that it was intensifying. (Doc. 7-3, p. 40). She testified that her elbows and knees locked up and made it impossible to function. (Doc. 7-3, p. 40). She reiterated that she could not hold things in her right hand or close it and confirmed she was trying to get

treatment for her arthritis. (Doc. 7-3, p. 41). Ms. McConnon stated that her left hand was somewhat deformed and that she had limited use of it for performing tasks like opening a door or mailbox. (Doc. 7-3, p. 42).

Eric Anderson, a vocational expert, testified about the nature of Ms. McConnon's past work. (Doc. 7-3, p. 44). He testified that an equivalent person could understand simple instructions, maintain concentration for two-hour periods, have occasional interactions with coworkers and supervisors, and that she could perform her past work. (Doc. 7-3, p. 45). He testified that reduced use of the hands could eliminate the ability to perform past work due to the need for bilateral handling and fingering. (Doc. 7-3, p. 46). The vocational expert testified that if a person with the same vocational profile was off task more than fifteen percent of the workday, that person would have difficulty keeping employment in the national economy. (Doc. 7-3, p. 46).

## THE ALJ'S DECISION

The ALJ found that Ms. McConnon has not engaged in substantial gainful activity since June 30, 2021, the alleged onset date. (Doc. 7-3, p. 18). The ALJ determined that Ms. McConnon suffers from the severe impairments of lumbar degenerative disc disease, chronic obstructive pulmonary disease, left knee degenerative joint disease, rheumatoid arthritis, generalized anxiety disorder, major depressive disorder, and neuropathy. (Doc. 7-3, p. 18). Based on a review of the

medical evidence, the ALJ concluded that Ms. McConnon did not have an impairment or a combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 19).

Given Ms. McConnon's impairments, the ALJ evaluated Ms. McConnon's residual functional capacity. (Doc. 7-3, p. 20). The ALJ determined that Ms. McConnon has the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations. (Doc. 7-3, p. 20). The ALJ noted that Ms. McConnon could frequently climb ramps and stairs but could not climb ladders, ropes, or scaffolds. (Doc. 7-3, p. 20). Ms. McConnon had to avoid exposure to hazardous machinery and unprotected heights. (Doc. 7-3, p. 20). Ms. McConnon could frequently balance, stoop, kneel, crouch, and crawl. (Doc. 7-3, p. 20). Ms. McConnon occasionally could have exposure to vibration, extreme temperatures, and pulmonary irritants, including fumes, odors, dust, gases, and poorly ventilated areas. (Doc. 7-3, p. 20). Ms. McConnon could understand, remember, and carry out simple instructions and could maintain attention and concentration on simple tasks for periods of up to two hours. (Doc. 7-3, p. 20). Ms. McConnon was limited to occasional interaction with coworkers and supervisors and could handle infrequent changes in the work setting. (Doc. 7-3, p. 20).

Based on this RFC, the ALJ concluded that Ms. McConnon could perform her past relevant work as a poultry boner. (Doc. 7-3, p. 24). Accordingly, the ALJ determined that Ms. McConnon was not under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 24).

**STANDARD OF REVIEW**

A district court must determine whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards in reaching that decision. *Winschel*, 631 F.3d at 1178. The district court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, a district court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then a district court "must affirm even if the evidence preponderates against the Commissioner's

findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

If the district court finds an error in the ALJ's application of the law, or if the district court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the district court must reverse the ALJ's decision. *Cornelius*, 936 F.2d at 1145–46.

**DISCUSSION**

Ms. McConnon contends that the ALJ did not properly apply the Eleventh Circuit pain standard. (Doc. 11, p. 5). Ms. McConnon also argues that the medical evidence in the administrative record does not support the ALJ's decision to discredit her subjective complaints. (Doc. 11, p. 5).

The Eleventh Circuit pain standard "applies when a disability claimant attempts to establish disability through [her] own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Coley v. Comm'r, Soc. Sec. Admin.*, 771 Fed. Appx. 913, 917 (11th Cir. 2019). When relying upon subjective symptoms to establish disability, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged [symptoms]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [symptoms]." *Wilson v. Barnhart*,

284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt*, 921 F.2d at 1223); *Chatham v. Comm'r, Soc. Sec. Admin.*, 764 Fed. Appx. 864, 868 (11th Cir. 2019) (citing *Wilson*). If the ALJ does not properly apply the three-part standard, reversal is appropriate. *McLain v. Comm'r, Soc. Sec. Admin.*, 676 Fed. Appx. 935, 937 (11th Cir. 2017) (citing *Holt*).

A claimant's credible testimony coupled with medical evidence of an impairing condition "is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223; *see Gombash v. Comm'r, Soc. Sec. Admin.*, 566 Fed. Appx. 857, 859 (11th Cir. 2014) ("A claimant may establish that he has a disability 'through his own testimony of pain or other subjective symptoms.'") (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). If an ALJ rejects a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. The Secretary must accept the claimant's testimony as a matter of law if the ALJ inadequately discredits the testimony. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Kalishek v. Comm'r, Soc. Sec. Admin.*, 470 Fed. Appx. 868, 871 (11th Cir. 2012) (citing *Cannon*).

When credibility is at issue, the provisions of Social Security Regulation 16-3p apply. SSR 16-3p provides:

> [W]e recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In

> considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4. SSR 16-3p adds that when an ALJ discredits a claimant's testimony about her symptoms:

> [I]t is not sufficient . . . to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough . . . simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *10.

In evaluating a claimant's reported symptoms, an ALJ must consider:

> (i) [the claimant's] daily activities;
>
> (ii) [t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) [p]recipitating and aggravating factors;
>
> (iv) [t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

> (vi) [a]ny measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Leiter v. Comm'r of SSA*, 377 Fed. Appx. 944, 947 (11th Cir. 2010).

Ms. McConnon argues that the ALJ did not consider the record as a whole in assessing her RFC. (Doc. 11, p. 8). Ms. McConnon contends that the ALJ misconstrued or overlooked medical records, relied on isolated portions of the evidence, and ignored evidence that contradicted the ALJ's RFC determination. (Doc. 11, pp. 8–9).

Ms. McConnon argues that the ALJ improperly evaluated her daily activities by concluding that those activities demonstrated her ability to perform a range of light work. (Doc. 11, p. 12). She asserts that the ALJ's finding of inconsistencies between her description of disabling symptoms and her reported daily activities is not supported by substantial evidence because the ALJ did not accurately characterize those activities. (Doc. 11, p. 14).[4]

---

[4] In addition, Ms. McConnon contends that the ALJ erred in finding that the record contained no evidence supporting her allegations of debilitating anxiety and depression. (Doc. 11, p. 14). She argues that the ALJ failed to adequately consider her financial inability to obtain specialized mental health treatment and improperly discounted her mental health complaints on that basis. (Doc. 11, p. 14). She asserts that the ALJ's determination that Dr. Nichols's opinion regarding her mental limitations was unpersuasive because it lacked support in her treatment history is not supported by substantial evidence, as the record documents treatment for anxiety and depression, including a

The ALJ acknowledged that Ms. McConnon's diagnosed impairments could reasonably be expected to produce some of her alleged symptoms but found that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. (Doc. 7-3, p. 21). The ALJ recognized that Ms. McConnon suffered from severe impairments, including lumbar degenerative disc disease, left knee degenerative joint disease, rheumatoid arthritis, COPD, generalized anxiety disorder, major depressive disorder, and neuropathy and incorporated some physical and mental limitations into the light work RFC to account for those impairments. (Doc. 7-3, pp. 18–20). The ALJ did not include a limitation in the RFC related to Ms. McConnon's ulnar deviation of her fingers and "gross deformity [of] her hands." (Doc. 7-15, p. 26). The ALJ discounted Ms. McConnon's report of disabling hand pain and difficulty holding objects because, although Ms. McConnon had "some physical findings or hand swelling, she has not reported dropping objects (Exhibits 13F and 14F). Her grip strength was normal in 2022 and in 2024 (Exhibits 8F and 12F). Additionally, she stated in late 2023 that she was able to wash dishes (Exhibit 7E)." (Doc. 7-3, p. 23).

---

prescription for Prozac. (Doc. 11, p. 16). Ms. McConnon's June 22, 2024 medical record shows that for more than half of the days preceding the appointment, she felt depressed and hopeless, had trouble with her sleep, and had trouble concentrating. (Doc. 7-15, p. 19).

The medical records that the ALJ cited for his findings regarding Ms. McConnon's hand pain are from disability assessments for her application for benefits. The ALJ relied on Dr. Alvin Tenchavez's June 2022 finding that Ms. McConnon had normal grip strength and could make fists, tie shoes, pick up small objects, hold a glass, and turn doorknobs. (Doc. 7-14, pp. 121–22). Dr. Tenchavez did not include rheumatoid arthritis in his list of diagnosed impairments. (Doc. 7-14, p. 122). When Dr. Tenchavez saw Ms. McConnon again in January 2024, again in connection with her disability determination, he repeated his findings about Ms. McConnon's grip strength and ability to manipulate objects and, again, did not include rheumatoid arthritis in his list of diagnosed impairments. (Doc. 7-14, pp. 160-61).

The ALJ did not cite the June 12, 2024 medical record concerning Ms. McConnon's treatment for right hand pain. (Doc. 7-15, pp. 2-5). Ms. McConnon was diagnosed with arthritis and pain in the joints of her right hand. (Doc. 7-15, pp. 3, 4). The ALJ did not cite two June 22, 2024 treating physician records that discussed at length Ms. McConnon's need to see a rheumatologist, her need to address her "rheumatoid process," the ulnar deviation of her fingers, and the "gross deformity [of] her hands." (Doc. 7-15, pp. 18, 26). The ALJ cited Ms. McConnon's purported statement "in late 2023 that she was able to wash dishes (Exhibit 7E)." (Doc. 7-3, p. 23). In fact, in November 2023, Ms. McConnon reported that she could

wash only a couple of dishes at a time because it "hurt[] to wash dishes, mop, sweep." (Doc. 7-8, p. 47). She reported that she needed two hours to wash dishes. (Doc. 7-8, p. 48).

Light work generally requires lifting up to 20 pounds at a time and frequently handling objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). A position may be classified as light work even when it involves minimal lifting if the position requires substantial walking or standing, or if the position primarily involves sitting while requiring occasional pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). "If someone can do light work . . . [s]he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). Sedentary work generally requires lifting or carrying no more than 10 pounds at a time, with occasional handling of lightweight items such as files, ledgers, or small tools. 20 C.F.R. § 404.1567(a).[5]

Chicken deboning requires the gripping of a chicken with one hand and the gripping of a deboning or paring knife in the other. A deboner must use the knife to cut through joints and use her fingers to peel the chicken flesh from the ribs.

[5] Although sedentary positions are primarily performed while seated, they may also require limited periods of walking or standing. 20 C.F.R. § 404.1567(a). A position is considered sedentary when such walking and standing occur only occasionally and the other requirements of sedentary work are satisfied. 20 C.F.R. § 404.1567(a).

Instructions for deboning include: "Now, being careful of your fingers, **push the knife towards the wingtip, until it bursts through**. This should fully separate the bone from the meat." https://www.theintrepideater.com/how-to-de-bone-a-chicken/ (last visited Aug. 26, 2026) (bold in article). The instructions state: "**Dig your fingers in to grasp the thigh bone, separating it from the meat**. This can mostly be done by force, but feel free to use the knife instead." https://www.theintrepideater.com/how-to-de-bone-a-chicken/ (last visited Aug. 26, 2026) (bold in article). The ALJ asked the VE to consider a hypothetical that "reduce[d] the use of hands bilaterally for handling, fingering, and feeling to frequent." (Doc. 7-3, p. 46). The VE stated that the limitation would "eliminate" Ms. McConnon's past work as a chicken deboner. (Doc. 7-3, p. 46).

On this record, the Court finds persuasive Ms. McConnon's contention that the ALJ overlooked medical records and relied on isolated portions of the evidence. The ALJ disregarded the evidence in Ms. McConnon's medical record concerning the gross deformity of her hands and the ulnar deviation of her fingers, a condition that "is a frequent problem occurring in patients with RA that compromises grasp." (https://pmc.ncbi.nlm.nih.gov/articles/PMC5030855/, last visited Aug. 26, 2026). An ALJ may not cherry-pick evidence to support a particular outcome. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports [a] decision, but to disregard other contrary evidence[,]"

and a decision is not supported where it was reached "by focusing upon one aspect of the evidence and ignoring other parts of the record"); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ had to consider the record as a whole, including the most recent medical evidence of finger and hand pain, ulnar deviation, and hand deformity. That medical evidence supported the limitations that the ALJ included in the hypothetical that called for reduced use of the hands, limitations that the ALJ omitted from Ms. McConnon's RFC. (Doc. 7-3, pp. 20, 46). The ALJ did not ask the VE if there were jobs in significant numbers in the national economy other than chicken deboner that Ms. McConnon could perform, likely because she was, at the time, 59 years old and had an eighth-grade education.

Substantial evidence does not support the ALJ's finding that Ms. McConnon could perform her past work as a chicken deboner. Because the ALJ found at step four that Ms. McConnon could perform her past relevant work as a deboner and did not proceed to step five or make alternative findings concerning other work that Ms. McConnon could perform, remand is appropriate to allow the Commissioner to reconsider the evidence concerning Ms. McConnon's hand impairments, reassess

her RFC as necessary, and, if appropriate, proceed to step five to determine whether she can perform other work existing in significant numbers in the national economy.

**CONCLUSION**

Accordingly, the Court reverses the Commissioner's decision and remands this matter for further proceedings consistent with this opinion.

**DONE** and **ORDERED** this August 27, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE